Preston BOLINGER; Blythe Bolinger; Dave Mathiesen; Brenda Shelton; Edwin Coulter; Donna Coulter; Glenn Wollam; Bonnie Schoenstein; and Mill Creek Subdivision Homeowners Association, a Colorado nonprofit corporation, Plaintiffs–Appellants and Cross–Appellees,

v.

Dennis NEAL and Plains View Development, LLC, a Colorado limited liability company, Defendants–Appellees and Cross–Appellants,

and

Walt DeWolf; Carol DeWolf; and Colorado Open Lands, a Colorado nonprofit corporation, Defendants–Appellees.

No. 09CA1314.

Colorado Court of Appeals, Div. IV.

Oct. 14, 2010.

As Modified on Denial of Rehearing Nov. 24, 2010.

Otis, Coan & Peters, LLC, Jennifer Lynn Peters, Brett Payton, Greeley, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

Shoemaker Chiselli & Schwartz, LLC, Paul H. Schwartz, Cynthia A. Mitchell, Boulder, Colorado, for Defendants–Appellees and Cross–Appellants.

Witwer, Oldenburg, Barry & Johnson, LLP, Patrick Groom, Timothy P. Brynteson, Loveland, Colorado, for Defendants–Appellees Walt DeWolf and Carol DeWolf.

Faegre & Benson, LLP, Laurence W. DeMuth, III, Colin C. Deihl, Jacy T. Rock, Denver, Colorado, for Defendant–Appellee Colorado Open Lands.

Opinion by Judge WEBB.

This case arises from quiet title, fraud, and breach of contract claims involving a path

easement within the Mill Creek Subdivision, a planned unit development (PUD), in Weld County. Plaintiffs, Preston and Blythe Bolinger, Dave Mathiesen, Brenda Shelton, Edwin and Donna Coulter, Glenn Wollam, Bonnie Schoenstein, and Mill Creek Subdivision Homeowners Association (HOA), have appealed. Defendants, Dennis Neal and his company, Plains View Development, LLC (Plains View), have cross-appealed. The remaining defendants, Walt and Carol DeWolf, and Colorado Open Lands (COL), a nonprofit corporation, have not cross-appealed.

## I. Background

In 2000, Neal began to develop a parcel of land near Berthoud, Colorado, consisting of Lot A and Lot B. Lot B was to be subdivided as a PUD consisting of nine large residential lots and approximately 100 acres of open space, which became Lot 10 of the subdivision.

In late 2000, Neal sold Lot A to Wollam and Schoenstein. He promised them open and unfettered access to Lot 10, if Weld County approved the subdivision and PUD, and to construct a trail on Lot 10.

On December 28, 2001, a Deed of Conservation Easement granted by Neal to COL covering what became Lot 10 was recorded. This deed reserved to Neal the power to grant the lot owners in the subdivision access to Lot 10. It required prior approval by COL of improvements and gave COL the power to restrict some activities on Lot 10.

In February 2003, Neal formed Plains View to continue the development. The first subdivision plat of Lot B, which the county approved as a PUD, was recorded on March 28, 2003. On April 8, 2003, Neal recorded a Declaration of Covenants, Conditions and Restrictions for the subdivision, which describes improvements that were never made.

On June 9, 2003, the Coulters purchased a lot in the subdivision, relying on Neal's representation that they would have open and unfettered access to Lot 10. On August 5, 2004, the Bolingers purchased a lot in the subdivision, relying on a similar representation by Neal. In dealing with these plaintiffs, Neal and Plains View also promised to construct a trail in Lot 10.

On August 14, 2004, Neal and Plains View recorded an "Amended Mill Creek PUD," which is described in the surveyor's certificate and the county's approval as a plat (amended PUD). Unlike the initial plat, it showed a 20-foot wide path around the perimeter of, and circling two ponds within, Lot 10. The Coulters and the Bolingers signed the amended PUD. All deeds for subsequent sales referred to it.

On March 4, 2005, Shelton and Mathiesen purchased a lot in the subdivision. Neal represented that they would have access to Lot 10 as depicted in a sales brochure on which he had sketched a path as depicted on the amended PUD. He also promised them a constructed trail, consistent with the sketch and the amended PUD.

On September 6, 2005, the DeWolfs purchased Lot 7, one of the residential lots, and Lot 10. They conditioned their purchase on limiting the path to the perimeter of Lot 10 and its not crossing the boundary between Lot 7 and Lot 10. Neal agreed, prepared a second amended PUD reflecting these changes, and caused it to be recorded. This plat was neither approved by the county nor signed by any of the existing owners.

On the same day, Neal and Plains View recorded two recreational licenses, one for the HOA and its members and the other for Wollam and Schoenstein but not their successors or assigns. The licenses provided for use of the path described in the amended PUD, subject to the HOA maintaining liability insurance, with Wollam and Schoenstein to pay a portion of the premiums.

By January of 2006, a dispute concerning plaintiffs' access to and use of Lot 10, including the existence of a path easement, had arisen. Plaintiffs commenced this action on December 18, 2007, asserting the following claims: (1) for a decree quieting title under C.R.C.P. 105 against COL and the DeWolfs, to the extent of an express or implied path easement consistent with Neal's representations and the amended PUD; (2) for common law fraud damages from Neal and Plains View, based on Neal's misrepresentations

about access to Lot 10; and (3) for breach of contract damages based on the failure of Neal and Plains View to make improvements described in the declaration and in his representations about the path.

Following a bench trial, the court entered detailed written findings of fact and conclusions of law. On post-trial motions, it entered corrected findings and, as relevant here, four separate orders. Ultimately, the court determined the following: (1) plaintiffs did not establish superior title concerning a claimed path easement over an open-space lot in the subdivision owned by the DeWolfs and subject to a conservation deed for the benefit of COL; (2) either directly or through the HOA, the individual plaintiffs were the beneficiaries of licenses for recreational use of this lot; (3) the individual plaintiffs established fraud against Neal and Plains View based on his misrepresentations about the path easement, but they were entitled only to nominal damages; (4) plaintiffs established breach of contract and were entitled to damages of $40,000 against Plains View and $81,555 against Neal, which included the $40,000; (5) plaintiffs could not recover attorney fees from Neal or Plains View; and (6) as the prevailing party on the quiet title claim, COL was awarded costs against plaintiffs.

## II. Summary

We affirm in part, reverse in part, vacate in part, and remand for further proceedings, as follows: (1) on the quiet title claim, (a) all plaintiffs except Wollam and Schoenstein established that an amended PUD and plat created an express path easement over the DeWolf lot, which was not precluded by COL's previously recorded conservation deed and is superior to the DeWolfs' title; and (b) Wollam and Schoenstein were not beneficiaries of this express easement and are not entitled to an easement by estoppel; (2) Neal and Plains View were entitled to judgment in their favor based on the statute of limitations as to the fraud claims of all individual plaintiffs except Shelton and Mathiesen; (3) the fraud claim of Shelton and Mathiesen fails because the express easement is consistent with what Neal promised them; (4) plaintiffs

are not entitled to recover attorney fees from Neal or Plains View; (5) the cost award in favor of COL is reversed as to all individual plaintiffs except Wollam and Schoenstein, as to whom it is vacated and remanded for further proceedings; and (6) the individual plaintiffs proved breach of contract and damages as awarded against Plains View, but any damages awarded against from Neal must be set aside.

## Appeal

### III. The Amended PUD Created an Easement for the Benefit of the Mill Creek Lot Owners

Plaintiffs first contend that because the amended PUD granted a path easement, the trial court erred in rejecting their quiet title claim. We conclude that the amended PUD created an express easement.

■ On appeal, a recorded instrument is reviewed de novo. *Bolser v. Bd. of Comm'rs,* 100 P.3d 51, 53 (Colo.App.2004). We first attempt to ascertain the meaning of a document granting an easement from the words used and the circumstances surrounding the grant; but if, upon doing so, we conclude the instrument is ambiguous, then we must look to extrinsic evidence to discern the grantor's actual intent. *Lazy Dog Ranch v. Telluray Ranch Corp.,* 965 P.2d 1229, 1236 (Colo.1998). Intent is a question of fact. *Burman v. Richmond Homes Ltd.,* 821 P.2d 913, 920 (Colo.App.1991). We defer to trial court factual findings of intent unless they are clearly erroneous. *See Schempp v. Lucre Mgmt. Group, LLC,* 75 P.3d 1157, 1161 (Colo.App. 2003).

■ An easement authorizes presence and action on the land of another. *Lazy Dog Ranch,* 965 P.2d at 1234. "No particular words are necessary for the grant of an easement...." *Hornsilver Circle, Ltd. v. Trope,* 904 P.2d 1353, 1356 (Colo.App.1995). Nor is it "essential to the validity of the grant of an easement that it be described by metes and bounds or by figures giving definite dimensions of the easement." *Stevens v. Mannix,* 77 P.3d 931, 933 (Colo.App.2003) (quoting *Howard v. Cramlet,* 56 Ark. App. 171, 939 S.W.2d 858, 859 (1997)). However,

"the instrument must identify with reasonable certainty the easement created and the dominant and servient tenements." *Hornsilver Circle*, 904 P.2d at 1356.

### A. A Plat or PUD Can Create an Easement

■ An easement is created "if the owner of the property to be burdened . . . conveys a lot or unit in a general-plan development or common-interest community subject to a recorded declaration of servitudes for the development or community. . . ." *Allen v. Nickerson*, 155 P.3d 595, 598 (Colo.App.2006) (quoting Restatement (Third) of Prop.: Servitudes § 2.1(1)(b) (2000)); *see also South Creek Assocs. v. Bixby & Assocs., Inc.*, 753 P.2d 785, 786–87 (Colo.App.1987) (transferee had constructive notice of parking easement because deed referenced subdivision agreement, which noted PUD containing the easement), *aff'd*, 781 P.2d 1027 (Colo.1989).

■ Under this general principle, "a plat can give rise to an express easement or dedication for private or public use." *Bloomfield v. Weakland*, 224 Or.App. 433, 199 P.3d 318, 326–27 (2008); *see Gray v. Osborn*, 739 N.W.2d 855, 861 (Iowa 2007); *Barry Simon Dev., Inc. v. Hale*, 210 S.W.3d 312, 315 (Mo. Ct.App.2006). Thus, where "a developer sells lots according to a recorded plat, the grantees acquire an easement in any areas set apart for their use." *Walker v. Duncan*, 236 Ga. 331, 223 S.E.2d 675, 676 (1976); *see Immanuel Baptist Church v. Barnes*, 274 S.C. 125, 264 S.E.2d 142, 144 (1980) ("When the owner of a tract of land lays it out in streets and lots on a plat and sells those lots by deeds referring to the plat, normally the legal effect is the creation and conveyance of private easements in the streets to the grantees."); *Murrells Inlet Corp. v. Ward*, 378 S.C. 225, 662 S.E.2d 452, 455–56 (App.2008) (similar); *Boucher v. Boyer*, 301 Md. 679, 484 A.2d 630, 636 (1984) (similar).

### B. The Amended PUD Created a Path Easement

Note 10 on the amended PUD identifies a "20.00' wide horse, bicycle & hiking path." The amended PUD shows this path with a dashed-line following the utility easement around the perimeter of Lot 10 and then looping around the small pond and the large pond within Lot 10. Thus, for purposes of title examination, it sufficiently identifies Lot 10 as the servient estate. *See Salazar v. Terry*, 911 P.2d 1086, 1090–91 (Colo.1996) ("Easements . . . burden one estate to the benefit of the other estate. The burdened estate is servient to the dominant estate which benefits from the easement.").

■ Nevertheless, the DeWolfs and COL argue that no easement was created because as the trial court pointed out, the amended PUD "does not indicate who can access the path or whether the path is an easement, right-of-way, or any other kind of property right." Neither prong of this argument is persuasive based on the filings for the subdivision, which show a common development plan involving a PUD.

The county approved the Mill Creek PUD. The PUD includes a CERTIFICATE OF DEDICATION to, among others, "[f]uture owners of the minor subdivision all . . . parks and open spaces . . . and easements for the purposes shown hereon." According to the FINAL PLAT NOTES:

B. Residential building permits will not be issued on Lot 10.

. . . .

H. A Home Owner's Association shall be established. . . . The Association is responsible for . . . maintenance of open spaces. . . . Open space restrictions are permanent.

" 'Planned unit development' means an area of land, controlled by one or more landowners, to be developed under unified control or unified plan of development. . . ." § 24–67–103(3), C.R.S.2010. In a PUD, "Typically the dwelling units are clustered closer together than would normally be permitted . . . and then larger areas of open space . . . are included within the development, open to all residents of the development." 8 *Thompson on Real Property* § 74.05 (David A. Thomas ed., 2d ed. 2005); *see also* 12 Richard R. Powell, *Powell on Real Property* § P9.05[6] (Michael Allan Wolf ed., 2008). Thus, the initial PUD establishes a common development plan including Lot 10.

█ Under such a plan, the dominant estate need not be specifically described. "Each lot included within the general plan is the implied beneficiary of all express and implied servitudes imposed to carry out the general plan." Restatement (Third) of Prop.: Servitudes § 2.14(1) (2000); *see, e.g., Tubbs v. Green*, 55 A.2d 445, 448–49 (Del.Ch.1947) (intent to benefit all lots sold according to general plan may be inferred from the plan). This is especially so where, as here, the owners who purchased before the amended PUD had been recorded all signed it, as did Neal, and the later owners' deeds referred to the "Amended Mill Creek PUD."

█ Moreover, for a plat involving a PUD or other common development plan to create an easement, it need not contain the word "easement."

> Where a conveyance of land describes the parcel as bounded by a street designated in the conveyance, or *refers to a map* on which spaces for streets, parks, or *other common uses* are shown, but the *conveyance says nothing about the creation of an easement* or a dedication to a public use, the conveyee of the land acquires an easement with respect to the street or the areas shown on the map.

4 Powell, *supra*, § 34.06 (emphasis added); *see, e.g., Bloomfield*, 199 P.3d at 326–29 (plat's notations of "private walk way" sufficient to confer easement because walk way shown on plat); *Sadler v. First Nat'l Bank*, 267 Ga. 122, 475 S.E.2d 643, 644 (1996) (construing "access road" as express easement because represented on plat); *Fairfield Corp. No. 1 v. Thornton*, 258 Ga. 805, 374 S.E.2d 727, 728 (1989) (because indicated on plat, designation of "drainage area" created easement); *see also* Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 4:31 & n.17 (2009) (noting that plat designations can create express easements by virtue of being "graphically represented on the plat").

█ The DeWolfs' assertion that a title examiner could disregard the path information in the amended PUD as merely descrip-tive is also unpersuasive. One function of a plat is to identify real property interests. *See Sellon v. City of Manitou Springs*, 745 P.2d 229, 234 (Colo.1987) (the term "plat" includes "a map and supporting materials of certain described land prepared in accordance with subdivision regulations as an instrument for recording of real estate interests with the county clerk and recorder" (citing § 30–28–101(5), C.R.S.2010)). And as indicated, easements are found based on maps.[1]

Nor is the absence of a metes and bounds description of the path significant. *See Stevens*, 77 P.3d at 933. Based on the amended PUD, the path can be located with reasonable certainty. It is shown as being 20 feet wide. The Lot 10 perimeter portion follows the metes and bounds description of Lot 10 and the boundary between that lot and Lots 5, 6, 7, 8, and 9. The loops around the two ponds can be located by reference to those features. *See Magnuson v. Cossette*, 707 N.W.2d 738, 744 (Minn.Ct.App.2006) (reference to natural landmarks in legal description is best method of determining boundary).

The DeWolfs' assertion that "the Trial Court found that Neal did not intend to create an easement" is overstated. The court found that Neal intended "to grant *access* to Lot 10" (emphasis in original), but that "the precise nature of this access was subject to widely divergent views and the parties' expectations apparently changed over time." It also found the licenses, which were recorded over one year after the amended PUD, to be "evidence that Neal and [Plains View] did not create an easement in Lot 10."

However, the court made no specific finding of Neal's intent when he directed that the amended PUD be prepared, signed it, and had it recorded. We decline to remand for such a finding because here a common plan of development exists and it suffices to enforce a servitude shown in the plan documents. *See Corner v. Mills*, 650 N.E.2d 712,

---

1. Further, here the record contains no evidence that *any* path existed when the amended PUD was filed, and the court awarded breach of con-tract damages for failure to construct an improved path.

715 (Ind.Ct.App.1995) ("The pertinent focus is on whether the circumstances and facts of the case, including the language of the deeds and the grantors' actions, reveal an intent by them to create such a plan or scheme."); *accord Storey v. Brush,* 256 Mass. 101, 152 N.E. 225, 227 (1926).

### C. The Path Easement Granted by the Amended Plat Is Not Precluded by the Conservation Deed

Alternatively, the DeWolfs assert that even if the amended PUD could be read to create a path easement, the conservation deed precluded Neal from doing so. We reject this assertion by applying the rule that "the holder of the servient estate may create additional servitudes in land burdened by a servitude if the additional servitudes do not unreasonably interfere with the enjoyment of the prior servitude holders." Restatement (Third) of Prop.: Servitudes § 4.9 cmt. e (2000); *see, e.g., Nemaha Natural Res. Dist. v. Village of Adams,* 207 Neb. 827, 301 N.W.2d 346, 348 (1981); *G Corp, Inc. v. MackJo, Inc.,* 195 W.Va. 752, 466 S.E.2d 820, 824 (1995) (owner of servient estate can grant successive easements for travel over same road).

### 1. The Conservation Deed Is Not Inconsistent with the Path Easement Created by the Amended PUD

Under section 3 of the conservation deed, Neal reserved "the right to perform any act not specifically prohibited or restricted...." In that section, COL agreed that Neal "may grant access to ten property owners located in the vicinity of [Lot 10] comprised of the owners of Lots 1 through 9 of the Mill Creek Subdivision ... for recreational uses permitted pursuant to Section 5.D."[2]

The path described in Note 10 of the amended PUD is consistent with the conservation deed. First, treating the path as an easement, the dominant estates are the other lots in the subdivision, as section 3 permits. Second, Note 10 describes a "horse, bicycle and hiking path." Section 5.D of the conservation deed, which is the only restriction on section 3, permits "hiking, horseback riding, [and] mountain biking," among other "recreational uses," if "not inconsistent with the Conservation Values." Recital C, "Conservation Values," identifies "open space, scenic, and wildlife habitat values." The trial court made no finding, nor does the record contain any evidence, that hiking, horseback riding, or bicycling are per se inconsistent with these values.[3]

The access that Neal could grant is not limited to only certain portions of Lot 10. Nor can we imply a limitation to a narrow and improved path, as the DeWolfs argue. Section 5.D identifies "hunting and fishing" as permitted recreational uses. These uses would be meaningless if hunters and fishermen were restricted to such a path.

The trial court separated Neal's ability to grant "access" to Lot 10 from his ability to grant a "property right." Likewise, the DeWolfs juxtapose "access" and "easement," arguing that Neal had the authority to grant the former, not the latter. But absent access, use would be impossible; and absent use, access would be hollow. Because Neal's power to grant access expressly includes allowing "recreational uses," he could grant an easement, subject to section 5.D. *See* Restatement (Third) of Prop.: Servitudes § 1.2(1) (2000) (easement creates "nonpossessory right to enter *and use* land in the possession of another") (emphasis added).

The DeWolfs also argue that any path easement granted by the amended PUD fails because it would be only a contingent easement, subject to COL's prior approval. They point to the conservation deed's prohibition on "construction or reconstruction of any improvements," section 4.B, subject to exceptions including, as relevant here:

---

**2.** Under section 6.D, Neal could also "permit public access on such terms and conditions as he deems appropriate, provided that such access is not inconsistent with the preservation and protection of the Conservation Values of the Property."

**3.** We express no opinion whether COL could restrict permitted recreational uses on a seasonal basis, such as to protect elk calving or to limit erosion in the spring.

**Other Improvements.** Grantor may construct non-paved footpaths on the Property to be used for permitted recreational uses as described in paragraph 5.D so long as these improvements are not inconsistent with the protection and preservation of the Conservation Values. Grantor shall submit to Grantee for approval proposed locations for footpaths prior to constructing such footpaths. Grantee's approval shall not be unreasonably withheld, conditioned, or delayed. Should more than 30 days elapse after Grantee's receipt of such written notice from Grantor without any response from Grantee, the construction of footpaths shall be deemed approved.

Section 4.B(2)(f).

The amended PUD does not provide for a trail surface or any other form of improvement to the 20–foot wide path. COL's qualified veto power applies only to a footpath that "Grantor may construct." All other subjects addressed under "(2) New Improvements Construction" involve man-made features such as signs, fences, and roads. Because we are not persuaded that mere use of a 20–foot wide path constitutes an improvement subject to prior COL approval, we decline to decide whether either (1) an owner can grant a contingent easement, or (2) such an easement would be unenforceable pending satisfaction of the contingency.

In addition, no mechanism comparable to section 4.B(2)(f) exists to seek COL's prior approval of uses, which "shall not be unreasonably withheld," that Neal could follow in exercising his power to grant access. Instead, section 2 of the conservation deed reserves to COL rights to enter the property to enforce the terms of the deed and to prevent activity that is inconsistent with its purposes. We express no opinion whether, acting under section 2, COL could assert that to protect conservation values, foot, horse, and bicycle traffic should be reduced to a path narrower than 20 feet. We hold only that on its face, the conservation deed does not prevent Neal from granting such an ease-ment.

### 2. The Path Easement Granted by the Amended PUD Constitutes Superior Title for Purposes of C.R.C.P. 105

The trial court held that plaintiffs "failed to show that any property right they might have is superior to COL's right." *Hinojos v. Lohmann,* 182 P.3d 692, 697 (Colo. App.2008) ("The plaintiff in a quiet title action has the burden of establishing title superior to that claimed by the defendant."). As to the DeWolfs, the path easement created by the amended PUD is superior to their title. We also conclude that as against COL, plaintiffs established superior title based on our holding that in the conservation deed, Neal reserved the power to grant the path easement.

In defending its cost award, COL asserts that it actively participated throughout the proceedings below for the purpose of determining "whether and to what extent COL could control the Homeowners' use of Lot 10," and that it "achieved ... clarity with respect to all parties' interests in Lot 10." However, our holding undercuts that achievement. Thus, because all individual plaintiffs except Wollam and Schoenstein have established "superior title" to the extent that COL defended its conservation deed against the path easement, COL could only be the prevailing party as to Wollam and Schoenstein.

### IV. An Easement by Estoppel Does Not Exist

Alternatively, the individual plaintiffs contend they are entitled to a path easement by estoppel under Restatement (Third) of Property: Servitudes § 2.10. The express easement that we have held was created by the amended PUD benefits the lots within the subdivision. Hence, we address easement by estoppel only as to Wollam and Schoenstein, whose lot was conveyed before the subdivision had been approved and platted. We conclude that the trial court acted within its discretion in denying such relief.

The court rejected the easement by estoppel claim because, "[w]hile the Plaintiffs may be disappointed that their access to the trail is limited to a license rather than an easement, the court need not imply an easement

to avoid the kind of grave injustice contemplated by the Restatement [ (Third) of Property: Servitudes, § 2.10]." The court also pointed out that neither COL nor the De-Wolfs had made any misrepresentations to Wollam or Schoenstein.

■ "An easement by estoppel is an equitable remedy." *Lobato v. Taylor*, 71 P.3d 938, 951 (Colo.2002). It may be invoked "when a landowner induces another to change position in reliance upon his promise," although the rights at issue "did not meet the formal conveyance[ing] rules." *Id.* The purpose is furthering "the policy of preventing injustice." *Id.*

As relevant here, the Restatement (Third) of Property: Servitudes § 2.10 permits a servitude to be established if the owner "represented that the land was burdened by a servitude under circumstances in which it was reasonable to foresee that the person to whom the representation was made would substantially change position on the basis of that representation," and that person does so. Section 2.10 was cited in *Lobato*, 71 P.3d at 950–51, and in *Friends of Black Forest Regional Park, Inc. v. Board of County Commissioners*, 80 P.3d 871, 878–79 (Colo. App.2003). But plaintiffs fail to identify a Colorado case, nor have we found one, in which the court recognized an easement by estoppel where, as here, the current landowner did not have any role in the misrepresentations that induced the change of position.

■ A trial court's decision to reject equitable estoppel will not be disturbed absent an abuse of discretion. *See Schneider v. Drake*, 44 P.3d 256, 262 (Colo.App.2001). For the following additional reasons, we discern no abuse of discretion.

Neither COL nor the DeWolfs made, nor were privy to, the alleged misrepresentations to Wollam and Schoenstein. The record does not contain any evidence that, at the time of the conservation deed, COL had any notice of their having been promised access to Lot 10. Because the lot they owned was never part of the PUD, the assertion that the amended PUD gave the DeWolfs notice of access to Lot 10 by Wollam and Schoenstein is unpersuasive.

The trial court held that Wollam and Schoenstein have a license to use Lot 10. This determination has not been appealed. While the license creates fewer rights than the easement that we have recognized under the amended PUD, we agree with the trial court that those rights preclude finding the type of injustice which would warrant disregarding usual conveyancing and recording principles. This is especially so because section 2.10 cautions that easements by estoppel "undercut policies encouraging the use of written documents for land transactions."

## V. Further Findings as to the Licenses Are Not Required

Plaintiffs contend the trial court erred in not defining the scope of their licenses. Because we have concluded that the amended PUD granted a path easement to the subdivision homeowners, we address this argument with regard only to Wollam and Schoenstein. The DeWolfs and COL respond that such relief would be in the nature of a declaratory judgment, which plaintiffs did not plead. We agree.

Plaintiffs brought a C.R.C.P. 105 action, seeking to have the court quiet title with respect to the path easement. C.R.C.P. 105 contemplates a "complete adjudication of the rights of all parties ... with respect to any real property...." No party has appealed the trial court's determination that Wollam and Schoenstein are beneficiaries of the recorded recreational license.

Plaintiffs cite no Colorado case decided under C.R.C.P. 105 defining the scope of a license, nor have we found one. And "a license is not [generally] viewed as an interest in the land." Bruce, *supra*, § 11:1 & n.5 (listing cases). Therefore, we decline to direct that the trial court make further findings concerning this license.

## VI. COL's Cost Award Against Wollam and Schoenstein Must Be Reconsidered

. Plaintiffs contend that costs should not have been awarded to COL because it was

not the prevailing party, and in any event that computer research expenses should not have been included in the costs awarded. Except for Wollam and Schoenstein, we have resolved the quiet title claim in plaintiffs' favor. Thus, because now COL could be the prevailing party on this claim only as to Wollam and Schoenstein, awarding costs will require further proceedings.

█ Where a case involves multiple claims but only some of them succeed, "the trial court has sole discretion to determine who is [the] prevailing party." *Pastrana v. Hudock,* 140 P.3d 188, 190 (Colo.App.2006). We discern no reason to follow a different approach where, as here, the same claim was brought by multiple parties, only some of whom prevailed. Hence, on remand the trial court shall first reconsider whether COL was the prevailing party as against Wollam and Schoenstein.

█ Similarly, what costs are awarded is within the trial court's discretion. *See, e.g., Munoz v. Measner,* 214 P.3d 510, 515 (Colo. App.2009). If, on remand, the trial court determines COL to have been the prevailing party as against Wollam and Schoenstein, then it shall reconsider the amount of its prior cost award. Therefore, addressing the recoverability of computer research expenses would be premature.

## VII. Damages for the Northern Perimeter Trail Are Not Properly Before Us

█ Plaintiffs contend the court erred in not awarding damages for failure to construct an improved trail along the northern perimeter of the subdivision. We conclude that this issue is not properly before us.

Initially, the trial court stated that plaintiffs had failed to prove damages because they had "not established that they will be able to construct a perimeter trail because it will require the approval of COL, which they do not have at this time." On plaintiffs' motion to reconsider, which argued that the perimeter trail was not subject to COL's approval, the court again declined to award damages but gave a different reason: "Plaintiffs did not establish by a preponderance of the evidence that Defendants would con-struct a path similar to that shown on the flyer or brochure provided to potential customers."

The statement of issues presented for review in plaintiffs' opening brief does not include damages on this claim. Plaintiffs address this different rationale for the first time in their reply brief, arguing that the court's finding "is not supported by the evidence and warrants reversal." Because we "do not address arguments raised for the first time in a reply brief," *Continental Divide Ins. Co. v. Dickinson,* 179 P.3d 202, 205 (Colo.App.2007), we affirm the trial court's refusal to award damages on this claim.

## Cross–Appeal

### VIII. The Fraud Claims Against Neal and Plains View Fail

Neal and Plains View challenge the fraud judgment entered against them on the grounds that the trial court erred in finding justifiable reliance on promises by Neal of "open and unfettered access" to Lot 10 and in rejecting their statute of limitations defense as to the fraud claims, except those of Shelton and Mathiesen. Because we agree with the latter contention, and we further conclude that our interpretation of the amended PUD as creating a path easement precludes the fraud claim of Shelton and Mathiesen, we need not address the former contention.

#### A. The Statute of Limitations Bars Most Fraud Claims

A fraud claim must be brought within three years of the date when the misrepresentation was discovered or could have been discovered with reasonable diligence. §§ 13–80–101(1)(c), 13–80–108(3), C.R.S.2010. Because the parties do not dispute the facts on which we rely, as discussed below, determining when this claim accrued "is an issue of law, which we review de novo." *Rider v. State Farm Mut. Auto. Ins. Co.,* 205 P.3d 519, 521 (Colo.App.2009).

█ In a real property dispute, the statute of limitations runs against the purchaser from the purchase date as to all matters of which the purchaser had actual or construc-

tive knowledge. *See Talbot v. Seabert,* 484 P.2d 1242, 1244 (Colo.App.1971) (not published pursuant to C.A.R. 35(f)). As a matter of law, a person who acquires an interest in real property is on constructive notice of all prior filings concerning that property. § 38–36–149, C.R.S.2010.

The trial court found that the Coulters, the Bolingers, Wollam, and Schoenstein each showed "by a preponderance of the evidence that Neal made specific representations to them that they would have permanent, open, and unfettered access to Lot 10. . . ." As to Shelton and Mathiesen, the court found that Neal promised "they would have access to the specific type of trail shown on the sales brochure Neal gave them, discussed with them, and on which he even drew." Neal and Plains View do not challenge these findings.

▪ The court held that the fraud claims were not time-barred because plaintiffs "did not know nor should [they] have known of the facts supporting their claims against Neal and [Plains View] until January 2006 at the earliest, when the first HOA meeting was held and at which it became clear that there was an issue about the Plaintiffs' rights in Lot 10." However, the court failed to address actual or constructive knowledge arising from the conservation deed. Based on the following undisputed facts, we reach a different conclusion.

Plaintiffs commenced this action on December 18, 2007. All plaintiffs but Shelton and Mathiesen purchased their lots more than three years before this date. Wollam and Schoenstein bought their lot on November 30, 2000, before the conservation deed was recorded. Wollam testified that he read a copy of the conservation deed "[v]ery soon after it was actually put in place . . . probably 2002." He does not argue otherwise on appeal. The remaining plaintiffs closed their purchases one or more years after the conservation deed had been recorded. None of them disputes that it was in their chain of title at the times of purchase.

Nevertheless, several plaintiffs argue that they could not have discovered the misrepresentation by reading the conservation deed because "nothing in the Conservation Easement restricts access to Lot 10; rather it restricts the uses of Lot 10." But as explained in section III. C.1 above, access is meaningless without considering limitations on use.

We have held that the conservation deed does not restrict Neal's power to grant plaintiffs access to all or any part of Lot 10. But his power is subject to limitations on use arising from section 5 and the conservation values identified in Recital C of the conservation deed. Thus, because the conservation deed does not permit "open and unfettered" access to Lot 10, it gave actual or constructive notice that Neal's representation was false. Given these limitations, plaintiffs' argument based on trial testimony from representatives of COL concerning how it might enforce them is misplaced.

Therefore, we conclude that the statute of limitations ran against the Coulters, the Bolingers, Wollam, and Schoenstein before they commenced this action.

### B. The Fraud Claim of Shelton and Mathiesen Also Fails

One element of fraud is detrimental reliance. *See Alzado v. Blinder, Robinson & Co.,* 752 P.2d 544, 558 (Colo.1988). The path described on the amended PUD conforms to the one Neal sketched on the sales brochure that he gave to these two plaintiffs. *See Colorado Dep't of Pers. v. Alexander,* 970 P.2d 459, 467 (Colo.1998) ("An appellate court may draw its own conclusions from operative documentary material in the record."). Thus, our conclusion that the amended PUD creates an easement for such a path defeats the trial court's finding that, having bought in reliance on this brochure, "Dr. Shelton and Mr. Mathiesen did not . . . receive the benefit of their bargain."

On the fraud claims, the trial court awarded plaintiffs nominal damages. Because the statute of limitations bars the fraud claims of the Coulters, the Bolingers, Wollam, and Schoenstein, and because Shelton and Mathiesen received what they were promised, the

fraud judgment in their favor and the nominal damages awards are reversed.[4]

## IX. Breach of Contract Damages Are Not Recoverable from Neal

Neal contends that the trial court erred when it entered judgment against him individually on plaintiffs' breach of contract claims. We agree that the trial court erred.

The court found that Neal and Plains View did not perform agreements to install or repair infrastructure items (a water conveyance system, an irrigation system, and a street light at the subdivision entrance). The court awarded the Coulters, the Bolingers, Shelton, Mathiesen, and the HOA $41,550 as against Plains View only (infrastructure claim). The court also awarded nominal damages of $5, again against Plains View only, for failure to construct a trail on Lot 10 (Lot 10 claim). However, on plaintiffs' motion to reconsider the Lot 10 claim, the court entered judgment of $40,000 in favor of all plaintiffs against both Neal and Plains View. The court then apparently added damages on the Lot 10 claim to damages on the infrastructure claim and imposed liability of $81,555 on Neal in favor of all plaintiffs except Wollam and Schoenstein.[5] However, in a separate paragraph the court ordered that the $40,000 judgment be entered in favor of Wollam and Schoenstein, and against Neal and Plains View.

Neal filed a second motion to correct the judgment, citing the inconsistency among the trial court's earlier summary judgment in his favor, its corrected findings, and its order on the motion to reconsider. The trial judge retired before ruling on the motion, and it was denied by operation of law under C.R.C.P. 59(j).

Plaintiffs agree that judgment should enter against Plains View only for the infrastructure claim. However, they argue that the court awarded damages on the Lot 10 claim, at least in part for fraud, and there-

fore, Neal should be liable for $40,000. But we have held that the statute of limitations bars the fraud claims of Wollam, Schoenstein, the Coulters, and the Bolingers, and that as to Shelton and Mathiesen, the path easement is consistent with Neal's representation on which they claim to have relied. Further, we agree with Neal that the court mistakenly imposed individual liability on him of $81,555.

■■■ "When an order is ambiguous, the reviewing court is charged with the task of determining what the trial court intended in issuing the order. In so doing, the court may refer to the entire record and to the circumstances surrounding the order." *People in Interest of D.C–M.S.*, 111 P.3d 559, 562 (Colo.App.2005). Here, the ambiguity arises from the trial court's inconsistent treatment of Neal's breach of contract liability.

Despite having granted Neal summary judgment on the infrastructure claim and stating that only Plains View was liable, the court imposed the $41,550 judgment on Neal in addition to Plains View. In its corrected findings, the court vacated the judgment against Neal and imposed liability on Plains View only. Also, the corrected findings imposed liability on Plains View for failing to construct a trail under the heading "Breach of Contract." The court dealt with plaintiffs' fraud claims in a separate section.

Additionally, the court issued its order on plaintiffs' motion to reconsider in response to their argument that they had proven damages of $40,000 for the absence of a trail. That argument focused on the trial court's "Breach of Contract" section in the Corrected Findings, and did not refer to the court's discussion of fraud.

Therefore, we conclude that Neal is not liable for any breach of contract damages.

## X. Conclusion

The judgment entered in favor of COL and the DeWolfs on the quiet title claim is re-

---

4. We do not reach plaintiffs' assertions that they presented sufficient evidence of actual damages or that the trial court should have awarded them attorney fees against Neal and Plains View because the defenses lacked substantial justification under section 13–17–102, C.R.S.2010.

5. The court apparently included the $5 of nominal damages when it calculated Neal's liability, which was error.

versed, as is the judgment entered on the fraud claim against Neal and Plains View, as well as the judgment for breach of contract against Neal.. The cost award to COL is reversed in part and vacated in part, and the case is remanded for further proceedings as to Wollam and Schoenstein. In all other respects, the judgment and orders are affirmed.

Judge MILLER and Judge BOORAS concur.