24CA0464 Iris Hollow v Children's House 07-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0464
Boulder County District Court No. 22CV30259
Honorable J. Keith Collins, Judge

Iris Hollow Master Homeowners Association,

Plaintiff-Appellee and Cross-Appellant,

v.

Children's House Preschool,

Defendant-Appellant and Cross-Appellee.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Gomez and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

Frascona, Joiner, Goodman, and Greenstein, P.C., Jesse Howard Witt, Boulder, Colorado; Wheeler Law, P.C., Karen H. Wheeler, Jami A. Maul, Greenwood Village, Colorado; Tobey & Johnson, P.C., Richard W. Johnston, Centennial, Colorado, for Plaintiff-Appellee and Cross-Appellant

Snell & Wilmer LLP, Ellie Lockwood, Carissa L. Pryor, Denver, Colorado, for Defendant-Appellant and Cross-Appellee

¶ 1    In this contract case arising from an easement dispute, defendant, Children's House Preschool (CHP), appeals the order certified under C.R.C.P. 54(b) in favor of plaintiff, the Iris Hollow Master Homeowners Association (the Association).  The Association conditionally cross-appeals the trial court's conclusion that the underlying contract at issue was valid as a matter of law.  We affirm the trial court's order and, thus, need not address the cross-appeal.  *See People v. Curtis*, 2014 COA 100, ¶ 12 (The "cardinal principle of judicial restraint [is] if it is not necessary to decide more, it is necessary not to decide more." (quoting *PDK Labs. Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment))).

## I.    Background

¶ 2    The Association administers real property in a planned, eighty-five-unit residential community in accordance with its "Declaration of Covenants, Conditions, and Restrictions" (the Declaration) and the Colorado Common Interest Ownership Act.  CHP operates a preschool on Lot 41 within the Iris Hollow Subdivision, but it is not part of the Association and is not subject to the Declaration.  This dispute concerns an adjacent section of the Association's property

called Outlot 42, which is defined as a common area under the Declaration.

¶ 3    Iris Hollow Montessori School used Lot 41 as a preschool from 1999 to 2003 without any formal agreement between it and the Association. Sometime before 2003, the Iris Hollow Montessori School installed a playground and fence on Outlot 42, used three parking spaces on it during school hours, and continued to maintain the playground. In February 2003, the Association entered into a formal use agreement with Iris Hollow Montessori School regarding Outlot 42 (the 2003 Agreement). CHP was not a party to the 2003 Agreement. The 2003 Agreement permitted the owner of Lot 41 to use three parking spaces located on Outlot 42 and a portion of the land on Outlot 42 as a playground. Although the 2003 Agreement recited that it would run with the land and bind successors so long as Lot 41 was zoned and operated as a "preschool," it was never recorded with the county. The 2003 Agreement further provided that it superseded any previous oral or written agreements between the parties and that it "may not be amended so as to materially interfere with or reduce the rights or

obligations granted in this Agreement, except in a writing duly authorized and executed by both parties hereto."

¶ 4     On March 17, 2003, CHP entered into a four-year lease with the owners of Lot 41 and the Iris Hollow Montessori School (the Lease).  It contained a provision titled "OTHER AGREEMENT ASSIGNED AND ASSUMED" that provided, in part:

> The parties understand that there exists an agreement between Landlord and [Iris Hollow Montessori School], pertaining to usage of certain common area of the Iris Hollow Subdivision as an outdoor children's play area and for parking, in connection with the operation of the Premises as a preschool.  A copy of such agreement is attached hereto.  Landlord hereby assigns and [CHP] hereby assumes as of the commencement of the Lease term and until expiration or termination thereof, all of the rights, benefits, burdens and obligations of the party designated as the "Preschool" under said agreement as the same may hereafter be amended or superseded by a substantially similar agreement between Landlord and [Iris Hollow Montessori School], that does not materially alter the rights, benefits, burdens and obligations of the parties thereunder, provided that, as between Landlord and [CHP], Landlord shall pay the Common Area Assessment under said agreement as amended or superceded [sic] during the term of the Lease and the responsibilities for maintenance, repair and provision of electricity under said agreement as amended or superceded [sic] shall be borne by

> Landlord and [CHP] as provided under
> paragraphs 4 and 6 of this Lease.

¶ 5    (Emphasis added.)

¶ 6    Under the Lease, CHP had the option to purchase Lot 41 and the preschool building pursuant to a purchase agreement that provided for the sale of Lot 41 to CHP "together with the interests, easements, rights, benefits, improvements and attached fixtures appurtenant thereto."  On June 14, 2005, CHP purchased Lot 41 and the preschool building.

¶ 7    CHP continuously used Outlot 42 and the associated parking spaces from 2003 until 2010.  During that time, several issues arose related to the maintenance of Outlot 42 and the fence surrounding it that were outside the scope of the 2003 Agreement.  Accordingly, in August 2010, the Association and CHP executed a new agreement (the 2010 Agreement) in part to address those maintenance issues.  In addition to the new maintenance provisions, the 2010 Agreement added provisions relevant to this litigation that were not contained in the 2003 Agreement.  The first, titled a "Grant of Easement," provided:

> Association, for itself, its successors and
> assigns, hereby grants and conveys to School

and its successors and assigns, an exclusive easement to install, construct and use the Playground upon Lot 42, and to maintain, repair and replace such Playground. School's easement shall be limited to the foregoing purpose only, and School shall not have the right to any other use, or to install, modify, or remove any other improvements to Lot 42 without prior written authorization from Association.

¶ 8 The next, titled "Term," stated that the easement grant "shall be for a period of ten years beginning on September 1, 2010 and ending on August 31, 2020.

¶ 9 The next, titled "Benefit," provided,

This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns. It is the intent of the parties that the provisions and covenants contained in the Agreement will touch concern and run with the land and will bind the respective successors and heirs of the parties during the term of this Agreement. Notwithstanding the above, should the primary use of Lot 41 become anything other than a preschool or primary level educational facility, this Agreement may be terminated by either party with 30 days written notice.

¶ 10 (Emphasis added.)

¶ 11 The last new provision, titled "Recording," provided that the Agreement would be recorded with the Clerk and Recorder of

5

Boulder County.  But consistent with the 2003 Agreement, the 2010 Agreement required that any amendments be made in writing signed by all of the parties.

¶ 12     In 2012, CHP, with the Association's permission, installed a new playground structure on Outlot 42, but the parties' relationship deteriorated.  After the 2010 Agreement expired, the parties attended mediation and negotiated a new use agreement (the 2020 Agreement).

¶ 13     Like the 2003 and 2010 Agreements, the 2020 Agreement defined certain maintenance obligations and required that future amendments be in writing and signed by the parties.  Also like the 2010 Agreement, the 2020 Agreement contained a term limit provision that provided, "The license granted in this Agreement shall remain in effect for a term of one-year[] . . . until August 28, 2021."  However, it did not purport to grant any form of easement.

¶ 14     The 2020 Agreement also contained a new provision, titled "Possible Conveyance of the License Area to CHP," that provided:

> During the term of this Agreement the Association agrees to move forward to seek consent of its members to convey the Tot Lot to [CHP] in fee simple within this year's license term.  Within the first half of the year 2021,

the Board will: (1) prepare a document to memorialize the Unit Owners' consent for the conveyance of the Tot Lot to [CHP]; (2) mail the proposal to the Members of Iris Hollow; (3) schedule a meeting of the Iris Hollow Members . . . ; and will, with the approval of the requisite percentage of Unit Owners, prepare and deliver a quit claim deed for the License Area.

¶ 15 When the 2020 Agreement expired on August 31, 2021, CHP asserted that it no longer needed the Association's permission to use Outlot 42 because Iris Hollow Montessori School had acquired a perpetual easement through the 2003 Agreement. The Association disagreed and filed a complaint seeking a declaratory judgment that CHP's rights to Outlot 42 had expired in 2021. CHP filed a counterclaim for breach of contract, alleging a breach of the 2003 Agreement.

¶ 16 As relevant here, at trial, the court advised the parties that the only extrinsic evidence it would consider was evidence related to whether the 2003, 2010, and 2020 Agreements "referred to the same property at issue . . . to ascertain whether parties intended for all three agreements to govern the same property at issue." Following a one-day trial, the court issued a thorough written order concluding that "[t]he 2003 Agreement was extinguished by the

7

2010 Agreement and now both the 2010 and 2020 Agreements have expired." Accordingly, it granted the Association's request for a declaratory judgment and ordered that because "there is no legal agreement currently governing the property at issue[,] . . . CHP must relinquish the property at issue before January 8, 2024," which CHP did.

¶ 17 The Association filed a "Motion for Summary Judgment Regarding Counterclaim for Breach of Contract Pursuant to C.R.C.P. 56." The parties then stipulated to certify the declaratory judgment order under C.R.C.P. 54(b), which the trial court granted. Thereafter, CHP filed a "Motion to Stay Pursuant to C.R.C.P. 62(b)" and, in the alternative, a "Motion for Leave to Supplement and Amend Counterclaims." The trial court granted the Association's Motion for Summary Judgment and denied CHP's Motion to Stay and Motion for Leave.

¶ 18 This appeal followed.

## II. Implied Novation

¶ 19 CHP contends that the trial court reversibly erred by refusing to consider extrinsic evidence concerning the 2003 Agreement before finding that an implied novation occurred. CHP argues that

8

because the court was required to consider the facts, circumstances, and conduct of the parties in determining whether there was an implied novation, CHP should have been allowed to introduce extrinsic evidence related to this requirement.

¶ 20    The parties dispute the preservation of CHP's argument. The Association argues that CHP waived this argument by conceding that all three agreements were unambiguous. It points to CHP's counsel's statement acknowledging that the court had already "concluded effectively that the 2003 agreement is unambiguous as a matter of law when ruling on the Association's Rule 56 motion," and to counsel's later statement, "So then we're looking at the 2010 and the 2020 agreements. As [the court] noted, we have taken the position, and we certainly stand by the position, that those agreements are unambiguous." CHP directs us to its trial response brief and asserts that this argument was preserved there, without further argument.[1]

_____

[1] In response to a pre-oral argument question concerning waiver, CHP argued that it did not realize until trial that implied novation was an issue the court would decide. But CHP did not make this argument in its response in the trial court, and we do not consider arguments raised for the first time in oral argument. *See McGihon v. Cave*, 2016 COA 78, ¶ 10 n.1.

9

¶ 21    "Preservation is a threshold question" because "[w]e do not review issues that have been insufficiently preserved." *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 22. We do not require "talismanic language" to preserve an issue for appeal. *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50 (quoting *In re Estate of Owens*, 2017 COA 53, ¶ 21). Preservation only requires that the issue "be brought to the trial court's attention and the court must be given the opportunity to rule on it." *Franklin D. Azar & Assocs. P.C. v. Ngo*, 2024 COA 99, ¶ 51.

¶ 22    Waiver is the intentional relinquishment of a known right or privilege. *People v Rediger*, 2018 CO 32, ¶ 39. Although a waiver can be implied, the conduct must be unequivocal, and it must clearly manifest an intent to relinquish the claim. *Phillips v. People*, 2019 CO 72, ¶ 21; *see also Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984).

¶ 23    Based on our review of the record, we conclude that CHP waived this issue by taking the opposite position in the trial court than it does on appeal and, thus, that any error is not reviewable. *See Rediger*, ¶ 40 (explaining that a waiver extinguishes error and appellate review). Indeed, in its response brief in the trial court,

and under the heading "The Extrinsic Evidence Offered by the Association Is Not Necessary to Interpret the Meaning of the 2003, 2010, or 2020 Agreements," CHP stated, "CHP maintains that consideration of parol evidence to ascertain the parties' intent in entering the 2003, 2010, and 20[2]0 Agreements is unnecessary, because the terms of each agreement are unambiguous. Thus, the Court may rule on the Association's declaratory judgment claim based solely on the agreements themselves." These assertions directly contradict CHP's argument on appeal that "[t]he district court erred in refusing to consider extrinsic evidence of the parties' intent and the essential terms of the 2003 Agreement before finding an implied novation occurred." Accordingly, we find this issue waived and do not consider it further. *See Rediger*, ¶ 40.

### III. Easement by Estoppel

¶ 24 CHP next contends that the trial court erroneously determined that the terms of the 2003 Agreement did not create an easement by estoppel. We are not persuaded.

¶ 25 "An easement by estoppel is an equitable remedy," and "Colorado law has repeatedly recognized this equitable right." *Lobato v. Taylor*, 71 P.3d 938, 951 (Colo. 2002). A trial court's

decision to grant an equitable remedy, such as an easement by estoppel, will not be disturbed absent an abuse of discretion. *See Bolinger v. Neal*, 259 P.3d 1259, 1268 (Colo. App. 2010).

¶ 26 To establish an easement by estoppel, a party must demonstrate that (1) the owner of the servient estate permitted use of the land "under circumstances in which it was reasonable to foresee that the user would substantially change position believing that the permission would not be revoked"; (2) the user "substantially changed position in reasonable reliance on that belief"; and (3) an "injustice can be avoided only by establishment of a servitude." *Lobato*, 71 P.3d at 950-51 (quoting Restatement (Third) of Prop.: Servitudes § 2.10 (Am. L. Inst. 1998)).

¶ 27 CHP argues that it purchased Lot 41 with the understanding that it would be permitted to operate a preschool and use Outlot 42 for a playground and parking indefinitely under the 2003 Agreement. It asserts that this understanding was reasonable given the terms of the 2003 Agreement and that it satisfied the first element of an easement by estoppel. It continues by asserting that its closing on the property constitutes a changed position and

12

reasonable reliance that satisfies element two of easement by estoppel.

¶ 28     We are not convinced, for two reasons.  First, the record shows that CHP willingly entered into the 2010 Agreement, which specifically provided, "The term of this easement shall be for a period of ten years beginning on September 1, 2010 and ending on August 31, 2020."  Moreover, the 2010 Agreement complied with the requirements of the 2003 Agreement that any amendments be in writing and signed by both parties.  Given this unequivocal language related specifically to the easement and the fact that no recorded easement exists for this property, we discern no abuse of discretion in the trial court's conclusion that CHP's reliance on the terms of the 2003 Agreement, after it executed the 2010 Agreement, was not reasonable.  And, as noted by the court, the fact that both sides were represented by counsel when the agreements were executed bolsters this conclusion.  *See Nelson v. Elway*, 908 P.2d 102, 108 (Colo. 1995) (concluding that when sophisticated parties, who are represented by counsel, have consummated a complex transaction and embodied the terms of that transaction in a detailed written document, it would be improper for the court to

13

rewrite that transaction by looking to evidence outside the four corners of the contract to determine the intent of the parties).

¶ 29    Likewise, the record shows that when the 2010 Agreement expired, CHP executed the 2020 Agreement, which provided in relevant part, "The license granted in this Agreement shall remain in effect for a term of one-years [sic] until August 28, 2021." Moreover, the 2020 Agreement contained a specific provision that contemplated the possible conveyance of the easement area (Outlot 42) to CHP via a quitclaim deed.  In our view, the unambiguous language of these provisions demonstrates, as the trial court found, that CHP's reliance on an indefinite easement from the 2003 Agreement was unreasonable.  *See French v. Centura Health Corp.*, 2022 CO 20, ¶ 25.

¶ 30    Second, the evidence adduced at trial supports the absence of reasonable reliance.

- The director of the Association and the executive director of CHP both testified that they wanted a new deal in 2010.

- The executive director of CHP told the Association's homeowners that CHP's easement would expire in 2020.

14

- The executive director of CHP emailed the Association in 2019 to request an easement that ran with the land, and the Association responded "no."

¶ 31 Under these circumstances, we discern no abuse of discretion in the trial court's refusal to find an easement by estoppel.

¶ 32 Additionally, to the extent CHP argues that the trial court abused its discretion by failing to consider extrinsic evidence when considering this issue, we conclude this argument is waived, for the reasons described above, and do not further address it.

## IV. Disposition

¶ 33 The judgment is affirmed.

JUDGE GOMEZ and JUDGE MEIRINK concur.