COLORADO COURT OF APPEALS     **2017COA53**

Court of Appeals No. 15CA1557
Jefferson County District Court No. 13PR534
Honorable Lily W. Oeffler, Judge

In re the Estate of Arlen E. Owens, deceased.

David Owens,

Petitioner-Appellee,

v.

Angela Dominguez,

Respondent-Appellant.

JUDGMENTS AFFIRMED

Division I
Opinion by JUDGE TAUBMAN
Graham and Navarro, JJ., concur

Announced April 20, 2017

Craig Wagner Law Firm, Craig E. Wagner, Denver, Colorado, for Petitioner-Appellee

Azizpour Donnelly, LLC, Katayoun A. Donnelly, Denver, Colorado, for Respondent-Appellant

¶ 1     Appellant, Angela Dominguez, appeals the district court's judgment granting the petitions of appellee, David Owens, for determination of testacy and to set aside nonprobate transfers. Dominguez also appeals a subsequent district court judgment holding her in contempt. We affirm.

## I.     Background

¶ 2     After he was discharged from a recovery center for health issues, Dr. Arlen E. Owens (the decedent) hired Dominguez as his private caregiver in 2010. The decedent was diagnosed with "memory impairment" upon his release and returned home despite medical advice to move to assisted living. The decedent died in July 2013.

¶ 3     After the decedent's death, his brother and only living heir, Owens, filed a petition for informal probate of the decedent's will and informal appointment of personal representative. He was then appointed the personal representative of the estate. In March 2014, Owens filed a petition for determination of testacy and for determination of heirs, alleging that the will that the decedent had signed in July 2012 was the product of undue influence by Dominguez and that the decedent had lacked the capacity to

1

execute the will. Owens also filed a complaint for recovery of estate assets and asked that the court invalidate the will and order that the decedent's estate be administered under intestate distribution statutes.

¶ 4 In March 2015, Owens filed a petition to set aside nonprobate transfers. He contended that payable-on-death (POD) designations on three accounts, executed by the decedent with Dominguez as the beneficiary, should be set aside on the ground that Dominguez had exerted undue influence on the decedent, who had lacked the capacity to execute the POD designations. In response, Dominguez filed a motion to dismiss the petition to set aside the POD designations for lack of jurisdiction, arguing that the POD designations were nonprobate transfers not governed by the probate code. The district court denied Dominguez's motion.

¶ 5 At the request of Owens and over Dominguez's jurisdictional objections, the district court imposed a constructive trust over the three POD accounts at issue. Then in July 2015, the court held an evidentiary hearing on the issues of testamentary capacity and undue influence. *Krueger v. Ary,* 205 P.3d 1150, 1154 (Colo. 2009). In a written order, the court found that the decedent had not had

2

the capacity to execute the POD designations and had been unduly influenced by Dominguez. However, it found that the decedent had had the testamentary capacity to execute his will and had not been unduly influenced by Dominguez in signing his will.

¶ 6 After the court issued its final judgment, it issued a contempt order against Dominguez for violation of the constructive trust as it related to $140,000 from the State Farm Bank account. Dominguez objected on the grounds that the court did not have jurisdiction to impose the constructive trust. The court sentenced her to six months in county jail, with the condition that she could purge the contempt by making $50,000 monthly payments until she paid $140,000.

## II. Standing

¶ 7 Dominguez contends that the district court did not have jurisdiction to set aside the POD designations and impose a constructive trust on the POD accounts because Owens and the estate did not have standing to make such requests. Owens responds that Dominguez cannot raise her standing claims on appeal, and that her standing claims do not relate to the court's authority in this case. We conclude that Dominguez can raise her

standing claims on appeal based on the holding of *In re Estate of Murphy*, 195 P.3d 1147, 1150-51 (Colo. App. 2008).

### A. Standard of Review

¶ 8 "[S]tanding is a jurisdictional prerequisite to every case and may be raised at any stage of the proceedings, including on appeal." *HealthONE v. Rodriguez*, 50 P.3d 879, 891 n.5 (Colo. 2002). We review issues of standing de novo. *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004).

¶ 9 Owens argues that Dominguez never raised the issue of standing in the district court and never disputed that he had a legally protected right to pursue a correct probate determination of his brother's estate. He asserts that as a result, Dominguez has not preserved this issue for appeal and that we may not review it. However, "lack of standing is a jurisdictional issue and may be raised at any time." *Peters v. Smuggler-Durant Mining Corp.*, 910 P.2d 34, 38 (Colo. App. 1995), *aff'd*, 930 P.2d 575 (Colo. 1997).

### B. Applicable Law

¶ 10 "The question of standing involves a consideration of whether a plaintiff has asserted a legal basis on which a claim for relief can be predicated." *Bd. of Cty. Comm'rs v. Bowen/Edwards Assocs.,*

*Inc.*, 830 P.2d 1045, 1052 (Colo. 1992).  To establish standing, a plaintiff must demonstrate that (1) he or she was injured in fact and (2) the injury was to a legally protected interest.  *See Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 18, 338 P.3d 1002, 1006; *Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977).

¶ 11    Under Colorado law, a POD designation is defined as follows:

> [T]he designation of (i) a beneficiary in an account payable on request to one party during the party's lifetime and on the party's death to one or more beneficiaries, or to one or more parties during their lifetimes and on death of all of them to one or more beneficiaries, or (ii) a beneficiary in an account in the name of one or more parties as trustee for one or more beneficiaries if the relationship is established by the terms of the account and there is no subject of the trust other than the sums on deposit in the account, whether or not payment to the beneficiary is mentioned.

§ 15-15-201(8), C.R.S. 2016.  In Colorado, POD accounts are not considered a part of the probate estate, although the probate code does permit POD designations.  *See id.* (defining "POD designation"); *see also* § 15-15-203, C.R.S. 2016 (authorizing POD accounts); § 15-15-212(2), C.R.S. 2016 (explaining rights on death concerning POD accounts).

¶ 12    A district court sitting in a probate matter has the same jurisdiction as the Denver Probate Court.  *In re Estate of Lembach*, 622 P.2d 606, 607 (Colo. App. 1980).  Probate courts, and by extension, district courts sitting in probate, have broad jurisdiction "to determine every legal and equitable question arising *in connection with* decedents' . . . estates, so far as the question concerns any person who is before the court by reason of any asserted right in any of the property of the estate."  *In re Estate of Murphy*, 195 P.3d at 1151 (emphasis added) (quoting § 13-9-103(3)(a), C.R.S. 2016).  Such courts also have jurisdiction

> [i]n any case in which a district court could grant such relief in a separate action brought therein, to impose or raise a trust with respect to any of the property of the decedent or any property in the name of the decedent, individually or in any other capacity, in any case in which the demand for such relief arises *in connection with* the administration of the estate of a decedent[.]

§ 13-9-103(3)(b) (emphasis added).

¶ 13    The *Murphy* division held that, based on the language of section 13-9-103(3)(a) and (b), "the phrase 'in connection with' [was] a grant of authority to resolve disputes logically relating to the estate," and it found that resolving the question regarding the joint

6

tenancy property at issue there — not considered part of a probate estate — was "essential to the proper and orderly distribution of estate property." *In re Estate of Murphy*, 195 P.3d at 1151-52 (citations omitted); *see also* § 15-10-302(2), C.R.S. 2016 (The probate court "has full power to make orders . . . necessary and proper to administer justice in the matters which come before it."). Thus, a district court's jurisdiction — and its authority to impose restrictions on nonprobate assets — may extend even to property claimed by the estate that may ultimately not belong to the estate. *See In re Estate of Lembach*, 622 P.2d at 608.

## C. Analysis

¶ 14 Consequently, the Denver Probate Court — and, as interpreted in *Lembach*, a district court — has jurisdiction to determine every legal and equitable question arising in connection with an estate, when any person comes before the court with any asserted right in the property of the estate. *In re Estate of Murphy*, 195 P.3d at 1151-52. The court has the power to resolve such questions that are "essential to the proper and orderly distribution of estate property." *Id.* at 1152 (citing § 15-10-302(2)). Thus, the governing statutes and case law indicate that the district court has broad

jurisdiction over any probate and nonprobate matters that are essential to proper administration of an estate.

¶ 15     In this case, resolving the issues surrounding the POD designations was essential to the proper and orderly administration of the decedent's estate. Because the money subject to the POD transfers would otherwise be a part of the decedent's estate, the court was required to determine whether Owens' allegations of undue influence and lack of testamentary capacity were true. Owens petitioned to determine testacy and heirs, to recover estate assets, and to set aside the POD designations. As relevant here, he alleged that Dominguez had asserted undue influence over the decedent and that the decedent had lacked the testamentary capacity to designate Dominguez as the beneficiary of the POD accounts. Thus, Owens' claims regarding the POD designations were legal and equitable questions that arose in connection with the estate.

¶ 16     We conclude that the reasoning in *In re Estate of Murphy* concerning joint tenancy real property applies equally to an heir's potential interest in accounts with POD designations. Thus, we conclude that the court had jurisdiction to impose a constructive

8

trust on the three POD accounts.  *See id.* at 1151-52; *see also*

*Mitchem v. First Interstate Bank of Denver, N.A.*, 802 P.2d 1141,

1142 (Colo. App. 1990) ("The power to determine whether to impose

a constructive trust is a matter within the purview of the probate

court."); *In re Estate of Lembach*, 622 P.2d at 608.

¶ 17    Therefore, following the reasoning in *Murphy*, we conclude that

Owens had standing in this matter and the district court had

jurisdiction to impose a constructive trust and review his claims.

### III.    Mental Capacity and Undue Influence

¶ 18    Dominguez next asserts that the district court erred when it

determined that the decedent had not had the testamentary

capacity to designate Dominguez as beneficiary of the POD

accounts and that Dominguez had unduly influenced the decedent

to designate her as beneficiary of the three accounts.  We disagree.

### A.    Standard of Review

¶ 19    Claims regarding the sufficiency of the evidence are mixed

questions of law and fact.  "Where there is a mixed question of law

and fact, the reviewing court will give deference to the trial court's

factual findings, absent an abuse of discretion,' but will

independently review questions of law." *Sheridan Redevelopment*

9

*Agency v. Knightsbridge Land Co.*, 166 P.3d 259, 262 (Colo. App. 2007) (quoting *Sanger v. Dennis*, 148 P.3d 404, 410 (Colo. App. 2006)).

¶ 20    Owens argues that the issue of "evidentiary sufficiency" was never raised or even mentioned in the district court and that Dominguez's pro se motion to set aside the judgment pursuant to C.R.C.P. 59 and 60 did not expressly raise a sufficiency of the evidence argument. Therefore, he argues, the issue has not been preserved for appeal.

¶ 21    We conclude that Dominguez sufficiently preserved the issue for appellate review by including it in her motion to set aside the judgment. Where an issue was brought to the district court's attention and the court ruled on it, it is preserved for appellate review; no talismanic language is required to preserve an issue. *See Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 COA 12, ¶ 23, 351 P.3d 493, 499.

### B.    Applicable Law

¶ 22    "It is the trial court's sole province to resolve disputed factual issues and to determine witnesses' credibility, the weight to accord testimony, and the inferences to be drawn from the evidence." *Id.*

at ¶ 24, 351 P.3d at 499. Indeed, a trial court's "determination of" a testifying witness' "credibility [is] entirely within the purview of the trial court as the finder of fact and is binding upon" an appellate court. *People v. Fordyce*, 705 P.2d 8, 9 (Colo. App. 1985). "The trier of fact is not required to accept a witness' testimony, even [if] it is uncontroverted." *Id.* We "may not reweigh evidence or substitute [our] judgment for that of the trial court." *Target Corp.*, ¶ 24, 351 P.3d at 499.

### C. Analysis

¶ 23 In its detailed, eight-page ruling following the June 2015 hearing, the district court made numerous factual findings, including that Dominguez lacked credibility due to inconsistencies in her testimony. It also found that the evidence suggested that Dominguez had attempted to mislead the court regarding her involvement in the POD designations "in order to appear less controlling and less influential in the Decedent's transactions."

¶ 24 The court concluded this despite Dominguez's contention that she presented unrefuted evidence from ten different witnesses that the decedent had testamentary capacity to designate her as beneficiary of the POD accounts. The trial court noted that most of

those witnesses had only met with the decedent briefly and retained a financial stake in testifying in favor of Dominguez. The court instead found that the testimony of the decedent's attorney, who had prepared his will, was "far more compelling." The attorney testified that when she and the decedent had discussed his POD designations, he had mistakenly told her that he had designated Owens as beneficiary of the accounts rather than Dominguez. The court concluded that the attorney's testimony demonstrated that the decedent was "severely confused" regarding the nature and effect of his POD designations such that he lacked testamentary capacity to make such dispositions.

¶ 25 Finally, the court concluded:

> [T]he Court infers from the confidential relationship Respondent had with the Decedent, the contradictions in Respondent's testimony, and the other evidence submitted by Petitioner, that Respondent exerted undue influence on the Decedent and manipulated him into making the POD designations.

The court's conclusion, based on the evidence presented, echoed the principles of *Krueger*, 205 P.3d at 1156.

¶ 26 Dominguez nevertheless asserts that the court's findings were inconsistent because Dominguez presented ten witnesses with

12

unrefuted evidence in her favor and the court used the same evidence to overturn the POD designations but uphold the will. However, the court explained that it had relied on different evidence in analyzing the will and the POD designations. Specifically, the court noted that "unlike the POD designations, the Decedent was represented by an attorney when he signed the will."

¶ 27 Based on the above findings, we conclude that the record supports the court's factual findings and its assessment of the credibility of each witness. Accordingly, we do not displace its conclusions. *Target Corp.*, ¶ 24, 351 P.3d at 499.

## IV. Right to Jury Trial

¶ 28 Dominguez next asserts that the district court erred when it prevented her from exercising her right to a jury trial. We disagree.

¶ 29 After the June 2015 evidentiary hearing and before any postjudgment motions were filed, Dominguez's counsel filed a motion to withdraw, which the court granted. Dominguez filed a pro se motion for an extension of time to retain counsel to file postjudgment motions. The court denied this motion. Dominguez then filed pro se motions to set aside the judgment and to reconsider the judgment. Both motions asserted that she was

entitled to a jury trial. The court denied her motions and denied her requests for a jury trial.

¶ 30    Owens asserts that Dominguez's claims regarding her right to a jury trial were unpreserved for appellate review since she made such requests after the trial court's judgment and thus waived her right to a trial by jury. We conclude that because Dominguez had the opportunity to exercise her right to a jury trial and failed to do so, she has waived her claims to such a right.

## A.    Standard of Review

¶ 31    We review the construction of statutes de novo. *Lobato v. Indus. Claim Appeals Office*, 105 P.3d 220, 223 (Colo. 2005). When interpreting a statute, we must determine and give effect to the General Assembly's intent. *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo. 2004). If the statutory language is clear, we interpret the statute according to its plain and ordinary meaning. *Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 397 (Colo. 2010).

¶ 32    The Colorado Rules of Probate Procedure are subject to the principles of statutory construction. *People v. Zhuk*, 239 P.3d 437, 438-39 ("We interpret rules of procedure consistent with principles

of statutory construction."). We construe them de novo. *Maslak v. Town of Vail*, 2015 COA 2, ¶ 10, 345 P.3d 972, 975.

## B. Applicable Law

¶ 33 Pursuant to *Krueger*, "whether the opponent's evidence meets the burden [of rebutting the presumption of undue influence] is a question of legal sufficiency for the trial court, not a question of fact for the jury." 205 P.3d at 1154 (holding that "this general rule holds true for the rebuttable presumptions of undue influence and unfairness"). "[I]f the presumption's opponent does offer evidence legally sufficient to meet the burden of going forward . . . [then] the fact remains disputed, to be determined by the jury." *Id.* at 1156.

¶ 34 Pursuant to C.R.P.P. 25, "[i]f a jury trial is authorized by law, any demand therefor shall be filed with the court, and the appropriate fee paid, before the matter is first set for trial. Failure to make such a demand constitutes a waiver of trial by jury."

## C. Analysis

¶ 35 Referencing *Krueger,* Dominguez contends that she asserted her right to a jury in a pro se motion as soon as the issue became ripe to be heard by a jury — when the court determined that she had met her evidentiary burden of going forward regarding the issue

15

of undue influence and testamentary capacity. Dominguez bases this argument on language in *Krueger* referring to disputed facts "to be determined by the jury." 205 P.3d at 1156. However, the issue was ripe to be heard by a jury when the issue of whether Dominguez had exercised undue influence was set for a hearing in June 2015. The court followed the legal principles set forth in *Krueger*, heard disputed testimony, determined whether Dominguez had satisfied her burden of proof, and concluded that Dominguez had exerted undue influence over the decedent and manipulated him into making the POD designations when he lacked testamentary capacity to do so. Dominguez should have requested a jury trial beforehand; by failing to do so, she waived her claim to that right.

¶ 36     Dominguez's attorney, who represented her before and during the hearing in June 2015, should have known that her opportunity to request a jury trial ripened prior to that hearing. In her postjudgment motions, Dominguez requested a jury trial but made no claim that she was unaware of her right to a jury trial. In any case, such argument would have been irrelevant, since the attorney that represented her at the bench trial did not make a jury request

16

prior to the trial. Nothing prevented Dominguez from asserting her right to a jury trial at that time.

¶ 37    Accordingly, we conclude the district court did not prevent Dominguez from exercising her right to a jury trial; therefore, it did not err in denying her belated request for one.

## V.    Contempt

¶ 38    Dominguez contends that the district court erred in concluding that the existence of nonliquid assets can be the basis for determining that a contemnor has the present ability to pay. Owens responds that Dominguez's release from jail in April 2016 after serving only three months, with work release, of her six-month contempt sentence renders the contempt issue moot. We agree with Dominguez that the claim is not moot, but we also disagree with her contention of error.

### A.    Standard of Review

¶ 39    Whether Dominguez had the duty and the ability to pay is a mixed question of law and fact. Where there is a mixed question of law and fact, we review to the trial court's factual findings for clear error, but independently review questions of law. *See E-470 Public Hwy. Auth. V. 455 Co.*, 3 P.3d 18, 22 (Colo. 2000). A finding of

contempt is within the discretion of the trial court and "will not be reversed absent an abuse of discretion." *In re Estate of Elliott*, 993 P.2d 474, 478 (Colo. 2000). The imposition of remedial sanctions for contempt is governed by C.R.C.P. 107(d)(2).

¶ 40 Ordinarily, we will not "render opinions on the merits of an appeal when the issues have become moot." *Johnson v. Griffin*, 240 P.3d 404, 406 (Colo. App. 2009). "An issue becomes moot when the relief granted by the court would not have a practical effect upon an existing controversy," *Trinidad Sch. Dist. No. 1 v. Lopez*, 963 P.2d 1095, 1102 (Colo. 1998), or when prospective relief is unnecessary to remedy an existing controversy or prevent its recurrence. *State Bd. of Chiropractic Exam'rs v. Stjernholm*, 935 P.2d 959, 971 (Colo. 1997).

## B. Applicable Law

¶ 41 Remedial contempt, at issue in this case, applies only to those individuals who have a duty and an ability to comply but refuse to do so. *See In re Marriage of Nussbeck*, 974 P.2d 493, 498 (Colo. 1999) (citing C.R.C.P. 107(d)(2)). Pursuant to C.R.C.P. 107(d), to "justify punishment for this civil contempt consisting in a refusal to perform a required act for the benefit of others, the trial court must

18

upon hearing make a finding both of the facts constituting contempt and of the present duty and ability to perform." *Marshall v. Marshall*, 191 Colo. 165, 167, 551 P.2d 709, 710 (1976) (citing *People in Interest of Murley*, 124 Colo. 581, 239 P.2d 706 (1951)). Thus, before imposing remedial contempt, the court is required to find a duty and a present ability to pay. C.R.C.P. 107(d)(2). However, "[t]he burden of proving a present inability to perform rests with the contemnor." *Elliott*, 993 P.2d at 479.

## C.  Analysis

¶ 42    We first address Owens' contention that Dominguez's contempt claim is moot now that she has been released from jail.

¶ 43    After the district court issued the final judgment, it held a hearing regarding the $140,000 in the State Farm Bank account and issued a contempt order. There, the court sentenced Dominguez to six months of jail with the condition that she could purge the contempt by making monthly $50,000 payments until she paid $140,000. The court warned Dominguez that if she failed to make any of these monthly payments, she would be rejailed. The risk of reincarceration only related to Dominguez's failure to pay pursuant to the contempt order. Even though Dominguez was

released from her sentence three months early, it is not clear from the record whether Dominguez has made all the payments pursuant to the contempt proceedings.[1]  Thus, because Dominguez could again be held in contempt we conclude the issue is not moot.

¶ 44    Nevertheless, we disagree with her contentions of error.  As stated above, the contemnor has "the burden of proving a present inability to perform" in order to overcome a finding of remedial contempt.  *Id.*  Here, the district court found that Dominguez had not met that burden.

¶ 45    In its sentencing order, the district court made extensive findings of fact constituting Dominguez's contempt and her ability to pay back the funds she took in violation of the court's orders establishing constructive trusts over the POD accounts.  First, the court found that, by operation of the constructive trust imposed on the POD accounts, Dominguez was prohibited from disposing of those funds.  Specifically, Dominguez had a court-ordered duty not to remove the $140,000 that remained in the State Farm Bank

---

[1] Owens' counsel stated at oral argument that the payments had not been made, and Dominguez's counsel did not disagree with that statement.

account. This money was no longer in the account at the close of the hearing on Owens' petition to determine testacy.

¶ 46    At the contempt hearing, the court noted that Dominguez "has informed the Court or told the Court a variety of different versions of where this money has gone." It continued:

> When she was asked to put the money, put a certain sum into the court registry, she indicated she did not have that sum, that it had been spent. She gave a variety of different ways it had been spent, but then recalled that she had the funds at home. And she was able to deposit it in the court registry. . . .
> Ms. Dominguez has provided the Court with so many versions of where these large sums of money have gone that the Court can no longer find that Ms. Dominguez has any credibility with reference to the sourcing of these funds.
>
> . . . .
>
> And the Court has made findings that Ms. Dominguez has the absolute ability to pay. She has affirmatively told the Court, if the Court were to believe Ms. Dominguez, that she can sell property in Mexico, it is hers to sell, and she can supply that to the Court. Again, I emphasize when she was to deposit a large sum of money into the court registry and she told the Court she did not have the money, I believe within the next at least couple of days, she was able to find the money. My recollection is she found it at home and she was able to deposit that sum in the court registry.

¶ 47    Thus, the court concluded that Dominguez could not provide a coherent, consistent account of what had happened to the funds in the POD accounts and that it had provided multiple continuances to Dominguez to resolve the nonpayment issues.  Thus, the court relied on evidence in the record to conclude not only that Dominguez had a duty but also that she had not met her burden of proof regarding her inability to pay.  Unlike the contemnor in *Elliott,* where the contemnor's attorney "filed an accounting, detailing how [the contemnor] expended the estate assets," *id.* at 480, Dominguez did not "sufficiently explain[] how" the missing funds had been disbursed.  *Id.* at 479.  The court's contempt order was supported by analysis of the evidence in the record; as a result, we will not displace it.  *See id.* at 479-80 (Such findings by a trial court "shall not be set aside unless clearly erroneous.")  (citations omitted).

¶ 48    Accordingly, we conclude that the district court did not err in holding Dominguez in contempt.

## VI.   Attorney Fees

¶ 49    Finally, both parties seek attorney fees.  Dominguez asserts that she is entitled to attorney fees pursuant to C.R.C.P. 12(b)(5)

22

and section 13-17-201, C.R.S. 2016, because the district court should have dismissed Owens' claim for lack of standing.[2] Owens also asserts that he is entitled to attorney fees pursuant to section 13-17-102, C.R.S. 2016, as well as C.A.R. 38(b) because Dominguez's claims are groundless, frivolous, and vexatious. We conclude that neither party is entitled to an award of attorney fees.

### A. Applicable Law

¶ 50    Under section 13-17-102, an award of attorney fees turns on whether a claim "lacked substantial justification" — in other words, whether it was "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(4). We will not award attorney fees where a genuinely disputed issue exists and a party presents a rational argument based on the evidence and the law. *See First Colo. Bank & Tr., N.A. v. Plantation Inn, Ltd.*, 767 P.2d 812, 814 (Colo. App. 1988). A losing position is not necessarily groundless for purposes of awarding attorney fees, nor is a claim groundless solely because the plaintiff failed to establish a prima facie case if there is some credible evidence to support the claim.

---

[2] Owens did not request attorney fees under C.R.C.P. 107(d)(2) in the trial court for the contempt proceedings.

*See, e.g., Colo. Supply Co. v. Stewart,* 797 P.2d 1303, 1307 (Colo. App. 1990).

¶ 51    Section 13-17-201 applies to C.R.C.P. 12(b) dismissals of "all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person." § 13-17-201; *see also Castro v. Lintz,* 2014 COA 91, ¶ 12, 338 P.3d 1063, 1067. An award of attorney fees under section 13-17-201 is mandatory when a trial court dismisses a tort action under C.R.C.P. 12(b). *Castro,* ¶ 12, 338 P.3d at 1067.

## B.    Analysis

¶ 52    We first conclude that Dominguez incorrectly relies on section 13-17-201, since it is limited to Rule 12(b) dismissals of tort actions.

¶ 53    We next conclude that neither Owens nor Dominguez is entitled to an award of attorney fees pursuant to section 13-17-102. Both parties presented rational arguments based on evidence and the law in regard to genuinely disputed issues. Their claims were not groundless because they both presented some credible evidence to support their claims. Therefore, we conclude that neither party

24

is entitled to attorney fees.  In any event, Dominguez is not entitled to attorney fees because she has not prevailed on appeal.

## VII.    Conclusion

¶ 54    Accordingly, the judgments are affirmed.

JUDGE GRAHAM and JUDGE NAVARRO concur.