23CA1904 Marriage of Howard 03-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1904
Jefferson County District Court No. 21DR30036
Honorable Philip J. McNulty, Judge

---

In re the Marriage of

Jessica Howard n/k/a Jessica Knepp,

Appellee,

and

Muhammad Howard,

Appellant.

---

APPEAL DISMISSED IN PART
AND JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Brown and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

---

Jones Law Firm, P.C., David Ari Collins, William H. Garvey, Centennial,
Colorado, for Appellee

The Harris Law Firm, PLLP, Katherine O. Ellis, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Muhammad Howard (husband) appeals the district court's judgments imposing remedial contempt sanctions in January, April, and August 2023.  We affirm the January 2023 contempt judgment and dismiss without prejudice husband's appeal of the later contempt rulings.

## I.     Background

¶ 2     In August 2022, the district court dissolved husband's marriage with Jessica Howard n/k/a Jessica Knepp (wife).[1]  Later that month, wife filed a motion for remedial contempt against husband.  She alleged that the court's temporary orders had required him to pay a support obligation of $4,500 per month and that he hadn't paid this obligation for the last seven months.  She also asserted that husband hadn't complied with the court's permanent orders, which directed him to pay a $480,000

---

[1] Husband appealed the court's permanent orders.  Although a division of this court ultimately reversed the permanent orders, *see In re Marriage of Howard*, (Colo. App. No. 22CA1717, May 16, 2024) (not published pursuant to C.A.R. 35(e)), the district court acted within its authority to enforce the permanent orders and issue the January, April, and August 2023 contempt rulings during the pendency of that appeal, *see Muck v. Arapahoe Cnty. Dist. Ct.*, 814 P.2d 869, 874 (Colo. 1991).

equalization payment and $114,000 toward her attorney fees.  The court issued the contempt citation.

¶ 3      A few months later, wife filed a motion to amend her contempt allegations.  She explained that, in the permanent orders, the court directed husband to pay $1,750 per month for maintenance and $2,161 per month for child support.[2]  She alleged that husband hadn't paid these additional obligations and asked the court for leave to amend her allegations concerning the total amount of husband's outstanding arrears.  The district court didn't rule on that motion.

¶ 4      At the January 2023 contempt hearing, wife testified that husband had significant assets and that his financial resources allowed him to live the same luxurious lifestyle he had lived since before the permanent orders.  She said that despite these resources husband hadn't complied with the court's temporary and permanent orders, and she reported that his unpaid child support and maintenance totaled about $54,700.  Husband acknowledged his court-ordered obligations but claimed that he couldn't pay.

---

[2] Under the permanent orders, husband's child support obligation was reduced to $1,916 per month in January 2023.

¶ 5    In an oral ruling, the court found that husband was in contempt. As a remedial sanction, the court sent husband to jail and set a cash bond of $54,700 — the amount of his unpaid child support and maintenance. The court also ordered husband to pay the attorney fees wife had incurred in the contempt proceeding, awarding her $13,300. The court then set a review hearing.

¶ 6    During the February 2023 review hearing, the court released husband from jail on a personal recognizance bond, explaining that it was doing so to give him an opportunity to pay his support obligations.

¶ 7    The court then held another contempt hearing in April 2023. Husband testified that he had made a few partial payments. Wife said that his outstanding support obligation had nonetheless grown to over $63,000. In an oral ruling, the court again found husband in contempt for not paying his court-ordered support obligations. The court sent husband to jail a second time and set a $11,500 cash bond. It also awarded wife her attorney fees but didn't determine the amount.

¶ 8    In August 2023, the parties returned to the court. The court noted that husband paid the $11,500 bond, and it released that

money to wife. Wife testified that husband still owed a significant amount of unpaid child support and maintenance and requested further remedial sanctions. The court orally ruled that husband was in contempt. It sent husband to jail a third time and set a $25,000 cash bond. The court also informed the parties that this would be the last proceeding on wife's August 2022 contempt motion.

## II. Finality of Contempt Judgments

¶ 9 Before reviewing husband's contentions, we must first address our jurisdiction over this appeal. *See Spiremedia Inc. v. Wozniak*, 2020 COA 10, ¶ 11.

¶ 10 We only have jurisdiction over an appeal from a final judgment. *L.H.M. Corp., TCD v. Martinez*, 2021 CO 78, ¶ 14; *see also State ex rel. Suthers v. CB Servs. Corp.*, 252 P.3d 7, 10 (Colo. App. 2010) ("The final judgment requirement is jurisdictional. Without a final judgment, we must dismiss the appeal."). A final judgment ends the proceeding in which it is entered and leaves nothing further to be done regarding the parties' rights. *In re Marriage of Pawelec*, 2024 COA 107, ¶ 17. A final judgment must also be reduced to a written, dated, and signed order. *SMLL, L.L.C.*

4

*v. Daly*, 128 P.3d 266, 269 (Colo. App. 2005); *see also* C.R.C.P. 58(a) ("[T]he court shall promptly prepare, date, and sign a written judgment . . . .").

¶ 11 A contempt judgment is final when the court adjudicates the issue of contempt and imposes sanctions. C.R.C.P. 107(f); *In re Marriage of January*, 2019 COA 87, ¶ 12. But when the court awards attorney fees in connection with contempt, the judgment is final only when the court determines the amount of attorney fees. *January*, ¶ 16.

¶ 12 After husband filed his notice of appeal, this court issued a show cause order, noting the lack of a written, dated, and signed order by the district court, and questioning whether there was a final, appealable judgment. *In re Marriage of Howard*, (Colo. App. No. 23CA1904, Dec. 12, 2023) (unpublished order). In response, husband confirmed that the district court hadn't entered written orders on his contempt. He filed a motion requesting a written order from the district court. The district court instructed him to provide the transcripts in which it had entered the contempt rulings, and it said that it would adopt those transcripts as its written orders. Husband submitted only the January 2023 hearing

5

transcript, and the court adopted that transcript as the sole written order.

¶ 13    In the January 2023 ruling, the court adjudicated the issue of husband's contempt and imposed remedial sanctions that also included a final determination on the amount of the awarded attorney fees. *See January*, ¶¶ 12, 16; *see also Pawelec*, ¶ 17. The court then adopted its oral ruling in a written, dated, and signed order. *See SMLL*, 128 P.3d at 269; *see also* C.R.C.P. 58(a). The January 2023 contempt judgment is therefore final and appealable.

¶ 14    However, the finality of the January 2023 contempt judgment doesn't extend to the court's later contempt rulings. In the April and August 2023 oral rulings, the court separately adjudicated the issues on husband's contempt, and it imposed remedial sanctions independent of the court's January 2023 judgment. The court's April and August 2023 determinations were therefore separate judgments. *See January*, ¶ 12; *see also Pawelec*, ¶ 17. But the court hasn't reduced those rulings to written, dated, and signed orders. *See SMLL*, 128 P.3d at 269; *see also* C.R.C.P. 58(a). Moreover, the court's April 2023 ruling awarded wife attorney fees, but the court hasn't determined an amount. *See January*, ¶ 16.

¶ 15 Following this court's show cause order, husband had the opportunity to obtain final, written orders on all the contempt judgments, but he only submitted a transcript of the January 2023 oral ruling to the district court. We therefore have jurisdiction to review only the January 2023 contempt judgment, and we dismiss the portions of husband's appeal concerning the court's April 2023 and August 2023 contempt rulings.

### III. January 2023 Contempt Judgment

¶ 16 Husband contends that the district court improperly entered the January 2023 contempt judgment. We reject his arguments.

### A. Applicable Legal Principles

¶ 17 A court may hold a party in contempt for "disobedience or resistance" to a lawful court order. C.R.C.P. 107(a)(1). And the court may impose remedial sanctions to force the party's compliance when it determines that the contemnor (1) didn't comply with the order; (2) knew of the order; and (3) has the present ability to comply with it. C.R.C.P. 107(a)(5), (d)(2); *see In re Parental Responsibilities Concerning A.C.B.*, 2022 COA 3, ¶ 24. When imposing remedial sanctions, the court must determine that the contemnor has the present ability to perform the act ordered and

specify the means by which the contemnor can purge the contempt. C.R.C.P. 107(d)(2); *In re Estate of Elliott*, 993 P.2d 474, 479 (Colo. 2000).

¶ 18 We won't disturb the court's contempt judgment absent a showing that the court abused its discretion. *In re Marriage of Sheehan*, 2022 COA 29, ¶ 23. A court abuses its discretion when it acts in a manifestly arbitrary, unreasonable, or unfair manner, or it misapplies the law. *Id.*

### B. Present Ability to Comply with the Orders and Purge the Contempt

¶ 19 Husband argues that the court's judgment must be reversed because the court didn't find that he had the present ability to comply with the court's orders and purge the contempt. We disagree.

¶ 20 To fully review the court's January 2023 contempt findings, we must begin with the court's determinations in its August 2022 permanent orders. In that ruling, the court found that husband wasn't credible with respect to his financial affairs. It rejected his assertions of unemployment, found that he was hiding assets, and said that he was doing whatever he could to shield his property

interests from wife and the court. The court also found that husband was living a five-star lifestyle, eating out most meals, and taking frequent vacations. The court determined that, at that time, he was earning over $15,000 per month, and, in dividing the marital estate, it allocated to him a home, other real property, and two Mercedes automobiles that, together, had over $1,500,000 in equity.

¶ 21 In the January 2023 contempt ruling, the court found that husband was "living the same lifestyle he [had lived] prior to permanent orders." It explained that husband "lives in a house that's worth over a million dollars, drives two Mercedes, eats out, [and] vacations." It also found that husband had recently paid an appellate attorney and a private process server "but ha[d] not paid a nickel" toward his support obligation. The court determined that husband was shirking his court-ordered obligations and found him in contempt. Then the court determined that $54,700 (the amount of his unpaid child support and maintenance) was an appropriate amount for husband to pay to purge his contempt.

¶ 22 Although the court didn't expressly say that husband had the present ability to comply with his court-ordered support obligations

9

or the present ability to purge his contempt, its findings, considered in the context of the case, sufficiently demonstrate that it made those determinations when it imposed the remedial sanctions. *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 21 (recognizing that a court's finding may be implicit in its ruling); *cf. In re Marriage of Gibbs*, 2019 COA 104, ¶ 9 ("The district court must make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order."). The court's permanent orders discussed husband's luxurious lifestyle and his substantial financial resources. Then, when it entered the contempt judgment, the court found that husband continued to live the same lifestyle, was paying other expenses, and still owned the assets allocated to him in the permanent orders. Implicit in those findings is the court's determination that husband had sufficient financial resources to pay his support obligations and the cash bond to purge his contempt.

¶ 23    Husband argues, however, that, even if the court made the necessary determinations on his present ability to comply with the court's orders and purge the contempt, the record doesn't support its determinations. In his view, wife didn't present evidence to

establish that he had sufficient equity or liquidity to pay the support obligations and purge his contempt. But wife didn't have that burden. Once wife established that husband had violated the underlying court orders, of which he was aware, it became husband's burden to prove that he didn't have the present ability to comply. *See Sheehan*, ¶ 24; *see also In re Marriage of Lamutt*, 881 P.2d 445, 447 (Colo. App. 1994) ("The rationale for imposing the burden upon the alleged contemnor is that the evidence relative to that person's ability to pay is more readily available to the alleged contemnor than it is to the movant; the trial court in earlier proceedings has already heard evidence and in entering its order has determined the alleged contemnor's ability or inability to pay; and the movant has established a prima facie case by proving entry of the decree and default on the part of the alleged contemnor to pay the amount or amounts therein."). And the record reveals that husband didn't meet that burden. *See Aspen Springs Metro. Dist. v. Keno*, 2015 COA 97, ¶ 27 ("Because the record supports the district court's factual findings concerning contempt, we will not disturb those findings.").

¶ 24    At the hearing, husband claimed that he didn't have the present financial ability to pay his court-ordered obligations. But he didn't present any evidence supporting his general statements. Nor did he present any direct evidence contradicting wife's evidence that

- he still owned the home, real property, and Mercedes allocated to him by the permanent orders;

- liens on his real property had been released;

- he recently paid at least $2,500 to his appellate attorney;

- he was employing a nanny;

- he was traveling with the parties' children;

- he continued to dine out; and

- he had recently paid for a private process server.

¶ 25    The court resolved the evidentiary conflicts and determined, with record support, that husband had the present ability to comply with the court's orders and purge his contempt. *See In re Estate of Owens*, 2017 COA 53, ¶ 47 (affirming a remedial contempt judgment where the contemnor "could not provide a coherent, consistent account" concerning an inability to pay); *In re Marriage of Cyr*, 186 P.3d 88, 94 (Colo. App. 2008) (upholding remedial

sanctions where the husband had assets to pay his outstanding obligation); *In re Marriage of Schneider*, 831 P.2d 919, 922 (Colo. App. 1992) (considering the contemnor's expenditures in support of the court's contempt determination).

¶ 26  Still, husband argues that the court improperly relied on his ability to "borrow funds to satisfy his support obligation."  *See Sheehan*, ¶ 37 ("The ability to purge the contempt must lie with the contemnor at the time of the hearing, not through some future transaction to obtain additional resources.").  But husband doesn't direct us to anything in the record indicating that the court relied on an ability to borrow money when it imposed the remedial sanctions.  *See Cikraji v. Snowberger*, 2015 COA 66, ¶ 10 (we won't comb the record for facts supporting an appellant's undeveloped argument).

¶ 27  We also reject husband's claim that the court improperly relied on its belief that he could obtain higher-paying employment.  *See Sheehan*, ¶ 34.  During a review hearing a few weeks after the court entered its January 2023 contempt ruling, the court commented that husband was "imminently employable."  But nothing in the record showed that the court considered his employability when it

entered the January 2023 contempt ruling or that it relied on such a circumstance to impose the remedial contempt sanctions. The court's January 2023 findings instead demonstrated that it had relied on the evidence of husband's present assets and financial resources.

¶ 28 Husband also asserts that because the court didn't make a finding that he had the present ability to comply with the court's orders, it incorrectly conditioned his remedial jail sentence on his "future performance." *See McVay v. Johnson*, 727 P.2d 416, 417-18 (Colo. App. 1986). However, as discussed above, there is no merit to husband's claim that the court didn't determine he had the present ability to comply with the court's orders. We therefore reject this assertion.

¶ 29 The court thus made the necessary determinations concerning husband's present ability to comply with the court's orders and his ability to purge the contempt, and the record supports the court's determinations.

## C. Due Process

¶ 30 Husband next argues that the court violated his due process rights by ordering him to pay a $54,700 bond to purge his contempt

14

because the bond amount exceeded the contemptuous conduct alleged by wife in her contempt motion. Wife argues that husband didn't preserve this issue for our review. We agree with wife and decline to review husband's unpreserved due process contention.

¶ 31     "Our judicial system depends upon the orderly presentation and preservation of issues." *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18. A party's mere opposition to another party's request in the district court doesn't permit the party to seek appellate review of all potential avenues for relief. *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011). The party must have brought the specific issue to the district court's attention and provided the court with an opportunity to rule on it. *Pawelec*, ¶ 38; *see also Valentine*, 252 P.3d at 1188 n.4 ("We review only the specific arguments a party pursued before the district court."). We won't address an argument not raised in or decided by the district court. *Melat, Pressman & Higbie*, ¶ 18.

¶ 32     At the January 2023 hearing, wife asked the court to use the then-present balance of husband's unpaid child support and

maintenance in determining the purge clause. Husband didn't object to her request.

¶ 33 Still, husband asserts that he preserved his due process argument by "highlighting the confusion related to the different contempt numbers." In support, he cites to statements he made at the August 2023 hearing. *See* C.A.R. 28(a)(7)(A) (The appellant's opening brief must give us "the precise location in the record where the issue was raised and where the court ruled."). But husband made those statements almost seven months after the court orally decided the January 2023 contempt judgment. And husband doesn't explain how his belated comments gave the court an opportunity to rule on the issue. *See Pawelec*, ¶ 38. Moreover, at no point during those comments did husband argue to the court that its January 2023 remedial sanctions exceeded the scope of wife's contempt motion or violated his due process rights.

¶ 34 Therefore, we won't address husband's unpreserved due process argument related to the court's January 2023 contempt judgment. *See Melat, Pressman & Higbie*, ¶ 18.

## IV.    Disposition

¶ 35    We affirm the January 2023 contempt judgment.  The portions of husband's appeal concerning the April 2023 and August 2023 contempt judgments are dismissed without prejudice.  Costs are taxed in accordance with C.A.R. 39(a)(1) and (2).

JUDGE BROWN and JUSTICE MARTINEZ concur.